(No. 84-CC-1568–

ABBINGTON HOUSE, Inc., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed May 29, 1990.*

*Order filed November 21, 1991.*

*Stipulated Order filed May 13, 1992.*

NISEN & ELLIOTT, for Claimant.

ROLAND W. BURRIS, Attorney General (MITCHELL KATTEN, Assistant Attorney General, of counsel), for Respondent.

## ORDER

PATCHETT, J.

This cause comes on for hearing upon the Claimant's motion for summary judgment. Oral argument was had on this matter on October 30, 1987, before the entire Court. Subsequent to the oral argument on the motion for summary judgment, leave was given to the Claimant to file an amended claim. That claim was filed on November 6, 1987.

The basis of the amended claim was to extend the requested relief for a period between January 1, 1982, and the date a judgment, if any, is rendered herein. In addition, the claim, as amended, requests interest, attorneys fees, and costs.

The Respondent filed a response to Claimant's brief in support of the motion for summary judgment on January 22, 1988. These documents were not provided to the judge in a timely manner. The Claimant filed a reply to the Respondent's response on February 16, 1988.

The relevant facts in this matter appear to be uncontested. On March 1, 1976, Christopher Hagen purchased a nursing home business known as Abbington House. Included in the purchase was an assignment of the leasehold interest in the buildings and real estate owned by the Roselle State Bank and Trust Company, Trust No. 1175 (hereinafter called the "Land Trust"). On the same date, Christopher Hagen and Clarence Hagen,

and The Doctors Hagen, a partnership made up of Christopher and Clarence Hagen, purchased 75% of the beneficial interest in the Land Trust. Further purchases of beneficial interests in the Land Trust were made by those parties on November 13, 1978, May 31, 1979, and June 10, 1980. On June 10, 1980, with that purchase, 100% of the beneficial interest in the Land Trust belonged to the Hagens. Abbington House was incorporated as Abbington House, Inc., on April 1, 1980.

Abbington House filed its annual cost report for fiscal year April 1, 1980, to March 31, 1981, with the Illinois Department of Public Aid (hereinafter called "IDPA"). The IDPA applied the provisions of the Illinois Administrative Code, section 140.537, in an effort to determine that the Abbington House business and the Land Trust were related organizations, and that the rent paid by Abbington House to the Land Trust was no longer an allowable measure of the reimbursement due to Abbington House from the IDPA. The IDPA established that the capital cost of the related organization should be used rather than the aforesaid rent. Prior to the time that this annual cost report was filed, the IDPA had allowed the rent paid to be used in determining the reimbursement to be paid to Abbington House.

The IDPA then turned to the Illinois Administrative Code, section 140.563, and concluded that the year 1970 was the base year for determining capital cost for the purposes of Abbington House. The IDPA based this conclusion on the fact that:

1. 1980 was the year that the Hagens' purchase of the complete beneficial interest in the land trust was accomplished; and

2. The provisions of the Illinois Administrative Code, section 140.563, establish January 1, 1978, as the effective cutoff date for the implementation of adjusted cost basis.

Illinois Administrative Code, section 140.563, has three paragraphs, and includes four provisions. A chart provided by the Respondent in his brief clearly illustrates the provisions as applicable to this claim:

| Facilities | 1/1/78 | Base Year |
| --- | --- | --- |
| 1. Built | Prior to | Later of construction or purchase; |
| 2. " | After | Year of construction; |
| 3. Purchased | Prior to | Later of construction or purchase; |
| 4. " | After | Base year established under No. 1 will not change |

It is obvious from the provisions of this chart, gained from the section previously quoted, that the applicable date provided by section 140.563 is January 1, 1978. Therefore, if IDPA's determination 1980 is the year of purchase is accurate, the base year established would clearly be 1970, since that was the date of construction.

The Illinois Appellate Court, Third District, has considered a closely related question in *Moehle v. Miller* (1987), 160 Ill. App. 3d 385, 513 N.E.2d 612. That case involved the interpretation of IDPA rule 4.14. That rule was the predecessor of section 140.563. The language of both sections is identical, except that rule 4.14 uses the effective date of July 1, 1977, while section 140.563 uses the effective date of January 1, 1978. It appears that there is no dispute between the parties hereto that the

applicable regulation in the present case is Illinois Administrative Code, section 140.563, and that the effective date for the issue in question is January 1, 1978.

There are two issues before the Court to be resolved in order to render a decision on whether or not the motion for summary judgment should be granted. The first is whether or not the transfer of a beneficial interest of the Land Trust is a change in ownership. The second issue, which need only be reached if the answer to the first issue is in the affirmative, is whether or not the transfer in ownership must be 100% complete before the adjustment of the basis, thus leading to a required adjustment in cost basis reimbursement.

The rules of the IDPA specifically state that a change in corporate stock ownership, or a partnership, is not a change in ownership for the purposes of applying the rules requiring increased cost reimbursement for a change in ownership. On the other hand, a transfer of land title, in the form of a deed or similar event, clearly would be a change in ownership sufficient to trigger an increased basis for the purposes of reimbursement under the applicable rules. Therefore, the first issue to be decided by the Court is whether or not the transfer of the beneficial interest in the Land Trust amounts to the transfer of ownership. In the last brief filed by the Respondent, the Respondent arguably has admitted that a transfer in beneficial interest is a transfer of ownership. However, the language used by the Respondent in that brief is somewhat unclear.

In *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540, the supreme court of the State of Illinois held that beneficiaries of a land trust were owners in relation to the statute providing that the owner of realty shall be liable for taxes. The court held the beneficiaries personally liable for unpaid real estate

taxes. The court defined ownership as comparable to control and consisting of an interest in real estate other than the holding of the title thereto. In making its decision, the court pointed out that the usual attributes of real property ownership were retained by the beneficiary of a land trust agreement.

In *In re Estate of Albert* (1983), 95 Ill. 2d 377, 447 N.E.2d 796, the supreme court held that the trustee of an Illinois land trust has both legal and equitable title. (See also *Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535, 185 N.E.2d 670, and *Levine v. Pascal* (1968), 94 Ill. App. 2d 43, 236 N.E.2d 425.) The court went on to hold that a beneficiary's interest in an Illinois land trust is personal property, not real property, citing *Horney v. Hayes* (1957), 11 Ill. 2d 178, 142 N.E.2d 94, *Shefner v. University National Bank* (1976), 40 Ill. App. 3d 978, 353 N.E.2d 126, and *Levine v. Pascal, supra.*

In *Just Pants v. Bank of Ravenswood* (1985), 136 Ill. App. 3d 543, 483 N.E.2d 331, the court held that whether a beneficiary or a trustee was a proper party as a defendant in a lawsuit depended in a large part on the specific recitations in the trust agreement. There the court reversed a lower court order because the specifics of the trust agreement in question were not before the appellate court and were not in the record. The appellate court stated that beneficiaries of a land trust could be held responsible for the torts or frauds of the trustees, where the beneficiaries participate in or authorize the commission of the wrongs. The trustee, on the other hand, was insulated from liability and negligence for the operation and maintenance of the property, but the trustee had no rights of possession, operation, control, or maintenance. In the present case,

the specific trust agreement is not before the Court, so we are somewhat similarly handicapped in terms of our interpretation of the trust agreement.

In *Imm Acceptance Corp. v. First National Bank & Trust Co. of Evanston* (1986), 148 Ill. App. 3d 949, 499 N.E.2d 1012, the appellate court held that a statute of frauds does apply to the sale of beneficial interest in an Illinois land trust. The court pointed out, however, that title of property does not necessarily involve ownership of property. Title refers to the legal relationship to land, while ownership is comparable to control. The key elements of ownership are control, and the right to enjoy the benefits of the property. The record is clear in the present claim that the beneficiaries of the Land Trust in question clearly had the right to control it. People who purchase shares in a corporation, while ultimately being able to control the acts and direction of a corporation, still require certain steps to be taken before they can exercise direct control. These steps would include acts such as the naming of a new board of directors, who would then select new officers, and the possibility of requiring amended by-laws. The purchasers of the beneficial interest of the land trust, on the other hand, are in an immediate position to control and direct the use of the real estate in question, absent some specific provision in the land trust agreement to the contrary. In addition, the IDPA rules clearly provide that the transfer of corporate shares is not a transfer of ownership for the purposes of increased cost basis reimbursement. There is not, or at least was not at the time the transaction in question took place, a similar rule or regulation relating to the transfer of the beneficial interest of the land trust.

For the foregoing reasons, we hold that the transfer of the beneficial interest of the Land Trust is a transfer in

ownership for the purposes of triggering the applicable IDPA rule regarding reimbursement rates.

We therefore reach the second issue which is whether or not transfer of the beneficial interest would have to be 100% complete before the applicable rule would come into question. Reviewing the case of *Moehle v. Miller, supra,* we find that it does not give us a great deal of direct guidance on the issue involved at the present time. In *Moehle v. Miller,* the court held that the Department's interpretation of that issue was correct. However, that issue clearly involved the sale of corporate stock, and as that court pointed out, IDPA rule 4.143 specifically provided that a change of corporate stock ownership did not constitute a change in ownership.

We have already held that a transfer of beneficial interest of a land trust should, and it appears that the State agrees, constitute a change in ownership. There is nothing in *Moehle v. Miller,* nor in the other cases cited therein, nor in any rule or regulation cited to the Court to date, which gives us guidance regarding the State's argument that 100% of the beneficial interest must be obtained prior to an adjustment in the reasonable cost-related basis as provided for in Federal law. We agree with the Respondent that the rules of the IDPA are entitled to substantial deference, and that it does not appear that the rules as set forth by the IDPA exceed any authority granted by either the Federal or the State government to make such rules. However, this Court cannot find an applicable rule to help us decide the issue at hand. With very little guidance to the Court in helping determine the second issue, we think it most logical to rule that the basis for reasonably cost-related reimbursement certainly not be adjusted until at least 50% change in the beneficial interest is achieved. It is quite clear that

the initial 22% beneficial interest in the Land Trust was obtained by The Doctors Hagen, a partnership made up of Christopher Hagen and Clarence Hagen, on March 1, 1976. A more difficult question is when the 53% obtained from Dwayne and Suzanne Jacobson was achieved. An exhibit attached to documents filed by the Respondent shows that there is an assignment dated March 1, 1976, to the Hagens from the Jacobsons, but that the acceptance by the Rozelle State Bank and Trust Company was not made until June 7, 1979. Since the acceptance date is after the effective date set forth in the IDPA rule, the issue that remains is whether more than 50% of the beneficial interest in the Land Trust was obtained prior to January 1, 1978. If so, the basis should be adjusted, and the Claimant should be given credit for all increases in beneficial ownership obtained prior to the effective date of January 1, 1978. There should be no increase in cost-related basis for purchases of beneficial interest which were obtained subsequent to January 1, 1978.

Therefore, this brings us to the issue of whether, as appears from the record, an assignment of beneficial interest executed before January 1, 1978, but not accepted by the trustee until after January 1, 1978, would in fact be effective. *Larkin v. Bank of Ravenswood* (1980), 91 Ill. App. 3d 803, 415 N.E.2d 15, holds that under a trust agreement which specifically provided that,

"no assignments of interest hereunder by a beneficiary shall be binding on the Trustee until the original or a duplicate copy of the assignment, in such form as a Trustee may approve, is lodged with it and its acceptance indicated thereon,"

a purported beneficiary did not acquire status as a beneficiary until the trustee accepted the assignment. In *Russell v. United States* (N. D. Ill. 1966), 260 F. Supp. 493, the court held that an assignment, even though not

filed with the trustee, or accepted by it, could be effective as between the parties in order to create a gift. What the specific provisions of the trust in question provide for, in terms of the effectiveness of an assignment of the beneficial interest without acceptance by a trustee, is beyond the power of the Court to discern since neither the Claimant nor the Respondent has provided us a copy of the original trust agreement in question. However, in *Ravenswood*, the court quoted Henry W. Kenoe, an authority on Illinois land trusts, in section 5-7 of the 1978 version of his book, as follows:

"The filing of the assignment of beneficial interest and its acceptance by the trustee may afford the assignee a measure of protection only against another assignee. The trustee's acceptance is not a representation by it that the assignor's rights are free from defect or claim. *The acceptance is merely a receipt by the trustee and nothing more.*" (Emphasis added). Kenoe, *Illinois Land Trusts* (1978), section 5-7.

It is difficult to reconcile the statement contained on the bottom of page 291 of the *Ravenswood* opinion with the quote of Mr. Kenoe. We believe the quote by Mr. Kenoe refers to the fact that the assignee may not propose a cause of action against the trustee based on the trustee's acceptance of the assignment, at least on the grounds that the signatures were not genuine. That part of the *Ravenswood* opinion which holds that an assignee may not become a beneficiary until the trustee accepts the assignment appears to be a more logical interpretation. Based on the foregoing, we conclude that the Hagens did not achieve a beneficial ownership interest in the Land Trust in question that exceeded 50% until the acceptance of the assignment by the trustee in 1979. This was after the effective date of the regulation on January 1, 1978. Therefore, the Department's interpretation as to the correct basis appears to be correct. Therefore, the motion for summary judgment is hereby denied. We will not deny the claim since the Claimant may still be able

to show the Court that the specific provisions of the Land Trust in question differ significantly from the Land Trust considered in the previous cases cited. Therefore, we remand this case to a commissioner for proceedings consistent with this opinion.

## ORDER

PATCHETT, J.

This cause comes on for hearing upon the Claimant's renewed motion for summary judgment. An order was entered by this Court on May 29, 1990, denying the Claimant's previous motion for summary judgment and setting forth the issues to be decided by the Court in this case. At that time, this Court concluded that the Claimant should have a right to show the Court the provisions of the land trust in question prior to this Court making a decision on the merits. This has now been accomplished.

The Claimant has filed a renewed motion for summary judgment and included a copy of the land trust in question, an escrow agreement entered into between the buyers and sellers of the beneficial interests of the land trust, and certain other documents relating to the sale of the beneficial interest which occurred in 1976.

The only issue before this court is when the Hagens acquired ownership of more than 50% of the beneficial interest in the land trust; and whether or not they acquired that controlling interest under the language contained in the original trust agreement, supported by the other documents which have been provided.

There is a significant difference in the language in the trust agreement we are dealing with here as it relates to assignment, and the language in the trust agreement the appellate court interpreted in *Larkin v. Bank of*

*Ravenswood* (1980), 91 Ill. App. 3d 803, 415 N.E.2d 15. As quoted in our previous order of May 29, 1990, the *Ravenswood* court was interpreting a trust provision which states,

"* * * no assignments of interest hereunder by a beneficiary shall be binding on the trustee until the original or a duplicate copy of the assignment, in such form as a trustee may approve, is lodged with it and its acceptance indicated thereon."

The comparable language of the trust agreement 1175 which was assigned to the Hagens as part of the purchase of the nursing home in question states as follows:

"No assignment of any beneficial interest hereunder shall be binding on the trustee until the original or duplicate assignment is lodged with the trustee, and every assignment of any beneficial interest hereunder, the original or duplicate of which shall not have been lodged with the trustee, shall be void as to all subsequent assignees or purchasers without notice."

Clearly there is a significant difference in the language of the two trust agreements. In the trust interpreted by the appellate court in the *Ravenswood* opinion, the trustee had to note its acceptance. The trust agreement we are dealing with herein must only be lodged with the trustee in order to be effective. Abbington House filed with its renewed motion for summary judgment certain documents which include an installment note, escrow agreement, and power of direction. The Claimant filed with its response to the Respondent's response to the Claimant's renewed motion for summary judgment, an affidavit of the bank officer who handled the transaction in question. No counteraffidavits have been filed by the Respondent. No discovery depositions or other efforts have been made by the Respondent to lessen the impact of the documents in question.

Therefore, considering the affidavit of the bank officer, the documents attached to the renewed motion for summary judgment, the important difference in the

language of the trust agreement we are interpreting herein as opposed to the trust agreement interpreted by the appellate court in *Larkin v. Bank of Ravenswood,* and considering the language in *Alcoa Building Products, Inc. v. La Salle National Bank* (1978), 62 Ill. App. 3d 510, 379 N.E.2d 66, wherein it was held that beneficial assignments are presumed to be accepted by the assignee, we hold that the Claimants have met their burden of proof that more than 50% of the beneficial ownership interest in the land trust in question was transferred by assignment prior to the effective date of January 1, 1978.

We therefore grant summary judgment to the Claimant on the issue of liability. This case is remanded to the commissioner for the purpose of determining the amount of damages to be granted in this claim.

## STIPULATED ORDER

PATCHETT, J.

The captioned claim coming before the Court on the parties' joint motion, and the Court being fully advised, finds:

1. By order filed November 21, 1991, found liability to exist in Claimants' favor, and directed the Court commissioner to conduct further proceedings to determine the amount of damages appropriate for award.

2. Claimants and Respondent now advise that they have stipulated to and agreed upon a proper resolution of this claim upon terms, which they ask the Court to approve, as follows:

(a) A Court award to Claimant Abbington House, Inc., of $225,732.07, calculated in accordance with an

agreed methodology, which sum will fully compensate Claimants in incremental amounts for the difference between Public Aid Code (PAC) section 11—13 vendor-payments (Ill. Rev. Stat., ch. 23, par. 11—13) previously made by the Illinois Department of Public Aid (IDPA) and the amounts calculated at an agreed, increased capital-cost rate, for all medical care rendered by said Claimant to IDPA recipients prior to July 1, 1991. Said incremental increases would have been payable from IDPA's long term care line item appropriation code 001-47865-4400-33-00-0000; and the parties agree that the provider participation fee provisions of PAC section 5—4.20 *et seq.* (added by Public Act 87—13) will not apply to said proposed award; and

(b) Upward revision by IDPA of the capital-cost rate component in its calculation, in accordance with the agreed methodology, of the amounts payable to said corporate Claimant for medical care rendered during State fiscal year 1992 and for subsequent care, with IDPA to make a timely reconciliation payment to said Claimant, at the revised rate, in order to supplement previous SFY 1992 care payments. Provider participation fees will apply to all such SFY 1992 care and subsequent payments.

3. The Court, having reviewed the parties' proposal, finds that their proposed disposition of this matter should be, and is hereby approved on the terms stipulated.

It is therefore hereby ordered that Claimant, Abbington House, Inc. (FEIN 36-3067203), be and is hereby awarded $225,732.07 in full payment of that portion of Claimants' claim for an incremental, capital-cost increase pertaining to care rendered prior to July 1, 1991.